**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALLEN GREENFIELD,
an individual,

      Plaintiffs,

              CASE NO. 04-71086

vs.

              PAUL D. BORMAN

SEARS, ROEBUCK AND CO.,      UNITED STATES DISTRICT JUDGE
a foreign corporation,

      Defendant

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT SEARS' MOTION FOR SUMMARY JUDGMENT**

   Now before the Court is Defendant Sears' Motion for Summary Judgment. Having

considered the entire record and having held a hearing on this motion, for the reasons that

follow, the Court GRANTS IN PART and DENIES IN PART Defendant Sears' Motion for

Summary Judgment.

**I.  FACTS**

   In this action, Plaintiff filed a four (4) count Original Complaint[1] on March 24, 2004

alleging age discrimination under Michigan and Ohio state laws. Plaintiff filed his First

Amended Complaint two months later. On June 14, 2004, Plaintiff filed a charge of age

discrimination with the EEOC. (Second Am. Compl. ¶ 63). The EEOC issued Plaintiff a Right-

_____

[1]  Count I:   Violation of the Elliot-Larsen Civil Rights Act for Age Discrimination
   Count II:   Violation of the Ohio Civil Rights Act for Age Discrimination
   Count III:  Violation of the Elliot-Larsen Civil Rights Act for Retaliation
   Count IV:  Violation of the Ohio Civil Rights Act for Retaliation

1

to-Sue letter on July 9, 2004.  Plaintiff then filed his Second Amended Complaint on September

10, 2004, adding a violation of the ADEA as a fifth count.  Defendant filed its Motion for

Summary Judgment on September 23, 2005.  Plaintiff responded on October 17, 2005.

Defendant replied on November 2, 2005.

Plaintiff Allen Greenfield ("Plaintiff") is an individual and a resident of the State of

Michigan.  (Second Am. Compl. ¶ 1).  Defendant Sears, Roebuck & Company ("Defendant") is

a corporation with its principal place of business in Illinois and incorporated in a state other than

Michigan.[2]  (*Id*.).

Plaintiff was born on February 4, 1943.  (*Id*. at ¶ 5).  He began his employment with

Defendant on September 4, 1990 as a District Business Manager ("DBM").  (*Id*.).  Plaintiff was

twice promoted to other DBM positions: in 1992 and 1994.  (Def.'s Br. 2).  Joe McCurry

("McCurry"), the Detroit District General Manager ("Detroit DGM"), and Mary Trinkel, the

Regional Human Resources Manager, promoted Plaintiff to the position of Human Resources

District Manager ("HRDM") in 1996. (*Id*.).  Plaintiff worked as a HRDM for six years.  (Second

Am. Compl. at ¶ 7).  During his tenure as a HRDM, Plaintiff claims McCurry made ageist

comments to him.  (*Id*. at ¶ 8).

In September of 2001, Walt Crockrel, the Store Manager of the Ann Arbor store retired.

(Def.'s Br. 8).  After hearing about the vacancy, Plaintiff told McCurry he would like to apply

for the job.  (Pl.'s Resp. Ex. 5, Greenfield's Dep. 56: 18-19).  McCurry allegedly informed

Plaintiff that he "had limited potential because of [his] age and there were other candidates who

---

[2] Though it is not stated in the Second Amended Complaint, Defendant is incorporated in the State of New York.

2

had higher potential than [him]." (Pl.'s Resp. Ex. 5, Greenfield's Dep. 56: 22-24). The Ann Arbor job was eventually filled by Pam Blanchard, who was 14 years younger than Plaintiff. (Def.'s Br. 8). When a vacancy developed in the Novi store a month later, McCurry told Plaintiff not to post for the managers job because of age and his limited potential as a store manager. (Pl.'s Resp. 12). Scott Caines, who is 22 years younger than Plaintiff, was placed in the Novi store. (Def.'s Br. 9).

Plaintiff also alleges that McCurry stated that "age is always one of those factors to be considered in making promotional decisions" regarding associates. (*Id*.). Further, Plaintiff claims that from the time he became a HRDM, he noticed a continuing pattern of age discrimination by Defendant. (*Id*.).

Plaintiff contends that on October 25, 2001, McCurry made a discriminatory statement regarding Paul Ciaramitaro ("Ciaramitaro") in a staff and store manager meeting. (Second Am. Compl. ¶ 11). McCurry allegedly remarked "that it was Ciaramitaro's age which prevented him from obtaining a favorable job in the reorganization." (*Id*.). Plaintiff claims that "McCurry praised Ciaramitaro as a merchant, but acknowledged his 'age' problem."[3] (*Id*.). Ciaramitaro relayed McCurry's comments to Plaintiff in his capacity as HRDM, and Plaintiff conducted an investigation and confirmed that McCurry made the statements. (*Id*. at ¶ 12). In November of 2001, Plaintiff wrote a memo to the Regional Human Resources Manager, Merle Grizzell ("Grizzell"), regarding McCurry's ageist statements to Ciaramitaro. (Pl.'s Resp. 6). Grizzell did not perform a further investigation because McCurry told him the comments were made in jest

---

[3] "McCurry [stated] that he wouldn't want to offer Ciaramitaro an opportunity with his 'age and only hard goods background.' McCurry then looked directly at Ciaramitaro and said, 'I guess, Paul, you can now sue me for age discrimination." (Second Am. Compl. ¶ 13).

3

and that Plaintiff did not produce any additional evidence of discrimination.  (Pl.'s Resp. Ex. 7, Grizzell Dep. 25, 27).  Grizzell only discussed the situation with Greenfield, McCurry and Grizzell's superiors, Mike Reskey and Milt Mooney.  Grizzell did not contact or interview any witnesses to McCurry's comments, including Ciaramitaro.  (*Id*. at 24:8-22). Grizzell subsequently advised Plaintiff to apologize to McCurry for investigating him without informing him first.  (*Id*. at 50:1-18).

In 2001, Defendant announced that it was undergoing a national reorganization and as a result, it was eliminating the HRDM position.  (Second Am. Compl. ¶ 10).  The effective date for the elimination of Plaintiff's position was August 31, 2002.  (Def.'s Br. 2).  Upon that date, Plaintiff had to find a new position or he would be terminated.  (Pl.'s Resp. 1).

In January 2002, McCurry retired and Winfrey Smith ("Smith") became the Detroit DGM.  (Def.'s Br. 8).  Plaintiff has not alleged that Smith discriminated against him.  (Pl.'s Resp. Ex. 5, Pl.'s Dep. 128: 9-16).

After McCurry's retirement, Plaintiff claims he was discriminated against when Defendant chose younger individuals for the Lincoln Park and Ann Arbor SGM positions.  In April and May 2002, Plaintiff was assigned to the Lincoln Park store as an interim store manager.  (Pl.'s Resp. 7; Pl.'s Resp. Ex. 5, Pl.'s Dep. 126: 12-13).  Smith told Plaintiff to stop searching for a job and move his things to the Lincoln Park store.  (Pl.'s Resp. Ex. 5, Pl.'s Dep. 126:21-23).  However, instead of being selected as the SGM, Smith told Plaintiff he would not be the Lincoln Park manager and the position was given to Pam Blanchard.  (Pl.'s Resp. Ex. 5, Pl.'s Dep. 126: 17-19; Pl.'s Resp. 7).  Plaintiff claims that, according to Smith, he did not get the permanent SGM job at Lincoln Park because Smith could not "sell it" to Teresa Byrd, the

4

Regional Manager. (Pl.'s Resp. Ex. 5, Pl.'s Dep. 127: 19-22).

Blanchard's move to the Lincoln Park store in June 2002 created an opening at a lower volume store in Ann Arbor. (*Id.*). Plaintiff immediately applied for the open SGM position in Ann Arbor. (*Id.*). Plaintiff called Larry Cassar ("Cassar"), the Toledo District General Manager ("Toledo DGM"),[4] to express his interest in the Ann Arbor position. (Pl.'s Resp. Ex. 5, Pl.'s Dep. 131). Cassar and Plaintiff spoke about Plaintiff's background, of which Cassar, according to Plaintiff, was very complimentary. (*Id.* at 131: 5-6). Cassar told Plaintiff during the conversation that he was a good candidate for the Ann Arbor job. (*Id.* at 131: 6-7).

Cassar was looking for a candidate who had hard and soft line experience. (Pl.'s Resp. 8). Plaintiff, though more experienced in soft lines, had years of experience running large retail stores. (Pl.'s Br. 8). Cassar eventually hired Jay Shapiro ("Shapiro") for the open Ann Arbor position. (Pl.'s Resp. 8). According to Plaintiff, Shapiro was younger and less qualified for the job. (*Id.*).

In order to find a position before he was terminated, Plaintiff enlisted the help of Teresa Byrd ("Byrd"), the new regional manager. (Pl.'s Resp. 9). Plaintiff sent Byrd a letter and asked to meet with her to discuss his qualifications. (*Id.*). Plaintiff applied and interviewed for a position as store manager in Strongsville, OH, but was not offered the position. (*Id.* at 10). However, Plaintiff received a call from DGM Rob Robinette after the interview, who informed him that an opening was created at the Randall Park store and offered Plaintiff the position of store manager. (Pl.'s Br. 10). Plaintiff's store was in an economically depressed area and had

---

[4] The Ann Arbor store was in the Toledo District. (Def.'s Br. 9). Cassar, the District Manager of the Toledo area, was at the same level as Smith, the Detroit District Manager. (Pl.'s Resp. Ex. 5, Pl.'s Dep. 130-31).

5

staffing and theft problems.  (*See* Def.'s Br. Ex. 2, Robinette Dep. 6, 8, 17).  As a result, Plaintiff

could not "turn the store around."  (Pl.'s Br. 10).  On September 22, 2003, Plaintiff was placed

on a performance improvement plan.  (*Id*.).  A week after Plaintiff was placed on the

performance plan, he became emotionally incapable of continuing to work and left the employ of

Defendant.  (*Id*.).

Defendant argues that Plaintiff's claim fails because he cannot show, with direct or

circumstantial evidence, that any of Defendant's agents acted with illegal discriminatory animus.

Defendant claims that Plaintiff cannot establish a causal link between the alleged failures to

promote, and the conduct of any of Defendant's agents.  Defendant also asserts that it had a

legitimate, non-discriminatory business reason for each of its selections.  Further, Defendant

avers that Plaintiff cannot show that its proffered reasons were pretext.  On the retaliation claim,

Defendant argues that Plaintiff cannot establish that the alleged protected activity was a

significant factor in the adverse decision.

Plaintiff claims that discriminatory comments were made directly to him by McCurry,

Plaintiff's former supervisor and the decision-maker who filled SGM vacancies.  Plaintiff alleges

that McCurry made similar comments to other employees.  Plaintiff contends that he can make

out his claim of discrimination by producing direct evidence of discrimination and by presenting

a *prima facie* case of discrimination.  Plaintiff also contends that he has established a *prima facie*

case of retaliation.  In addition, Plaintiff argues that decision-makers were aware of his protected

activity and therefore his retaliation claim is legally supported.

Defendant replies that McCurry retired in early 2002 and had nothing to do with Larry

Cassar's decision to select another candidate for the Ann Arbor job in June 2002.  Defendant

6

argues that Cassar had no discussions with McCurry about Cassar's decision to select Shapiro. Therefore, Defendant claims that there is no direct evidence of discrimination attributable to Cassar. Additionally, Defendant argues that second-guessing Cassar's business judgement regarding the Ann Arbor SGM does not give rise to a material question of fact concerning discrimination or pretext. Defendant argues that Cassar was not aware of Plaintiff's memo to Grizzell complaining of age discrimination because Grizzell told no one about any of Plaintiff's complaints, other than McCurry, Mike Reskey and Milt Mooney. Even if Cassar knew of the complaint, Defendant avers that there is no evidence of a causal connection to Cassar's promotion decision.

## II.   ANALYSIS

### A.   Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A "genuine" issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In deciding a motion for summary judgment, the Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party "must do more

7

than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

"Intentional discrimination claims can be proven by direct or circumstantial evidence." *DeBrow v. Century 21 Great Lakes*, 463 Mich. 534, 539 (2001). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *see also Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001). In a direct evidence case involving mixed motives, i.e., where the adverse employment decision could have been based on both legitimate and legally impermissible reasons, a plaintiff must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *Millner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 966 (2003) (citing *Sniecinski v. Blue Cross and Blue Shield*, 469 Mich. 124, 133 (2003)); *see also Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 606-07 (1997). A plaintiff must also establish his "qualification or other eligibility and present direct proof that the discriminatory animus was causally related" to the action of the decisionmaker. *Id.* "Upon such presentation of proofs, an employer may not avoid trial by merely 'articulating' a nondiscriminatory reason for its action. Rather, 'the defendant may avoid a finding of liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision.'" *Id.*

In analyzing claims of unlawful discrimination under Title VII or the Elliot-Larsen Civil Rights Act ("ELCRA") based upon indirect evidence, the Court must apply the following three-step *McDonnell-Douglas* framework. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610-11 (6th Cir. 2002); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63 (Mich. 2001) (relying upon Title VII

8

jurisprudence in adjudicating state anti-discrimination claims).  First, the plaintiff must establish a *prima facie* case of unlawful discrimination.  *Id.*  Once the plaintiff establishes a *prima facie* case of unlawful discrimination, a presumption of such unlawful discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981).  If the defendant meets this burden, then the presumption of unlawful discrimination disappears, and the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for unlawful discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action.  *See Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).  If the plaintiff demonstrates that the defendant's proffered, legitimate reason is a pretext for unlawful discrimination, then the fact finder may infer unlawful discrimination.  *See Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 344 (6th Cir. 1998).  Throughout the entire *McDonnell-Douglas* framework, the plaintiff bears the burden of persuasion.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993).  The shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination. *Trans World Airlines, Inc v Thurston*, 469 U.S. 111, 121 (1985).

The pertinent part of the  Michigan's Elliott-Larsen Civil Rights Act provides:

(1) An employer shall not do any of the following: (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L. § 37.2202(1)(a).

9

**B.       Discussion**

**1.       Conflict of Law**

Plaintiff brings claims against Defendant for age discrimination and retaliation under both Michigan and Ohio law.  Defendant argues that Michigan law applies because the decisions were made in Michigan, as were the jobs in question.  Defendant cites *Sutherland v. Kennington Truck Service, Ltd.*, 454 Mich. 274 (1997).  In his response, Plaintiff withdraws his claims under Ohio law "given Defendant's admission that Michigan law applies."  (Pl.'s Resp. 11).

The Court concludes that Michigan law applies.  The *Sutherland* Court held that Michigan law applies unless a "'rational reason' to do otherwise exists."  454 Mich. at 286.  Additionally, neither party cites Ohio law in their briefs and neither contests reliance on Michigan law.  Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's Count II and Count IV,[5] as Michigan law applies to the claims in the instant case.

**2.       Time Barred Claims**

*a.       ADEA Claim*

Defendant argues that Plaintiff's ADEA claim is time-barred because Plaintiff failed to timely file his charge ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC").  Defendant argues that Plaintiff had 300 days after the alleged adverse action to file an ADEA charge and that by Plaintiff's own account, the last alleged adverse action was his promotion to the Randall Park store in August 2002.

Plaintiff filed his EEOC Charge on June 14, 2004.  (Second Am. Compl. ¶ 63).  While

---

[5]     Count II:      Violation of the Ohio Civil Rights Act for Age Discrimination
        Count IV:     Violation of the Ohio Civil Rights Act for Retaliation

Defendant claims that Plaintiff's last alleged adverse action was in August 2002, Plaintiff's

EEOC Charge states September 26, 2003 as the last date of discrimination.  (Def.'s Br. Ex. 19).

Viewing the facts in a light most favorable to the Plaintiff, the EEOC Charge was filed on

September 26, 2003, within 300 days of Plaintiff's last alleged date of discrimination pursuant to

42 U.S.C. 200e-5(e)(1).  Accordingly, the Court finds that Plaintiff's EEOC Charge was timely.

                                        *b.*    *Michigan State Law Claims*

Defendant argues that Plaintiff's Complaint alleging state law violations was filed on

March 24, 2004, and thus any claims relating to events prior to March 24, 2001 are barred by the

three year statute of limitations under Mich. Comp. Law section 600.5805.  Plaintiff does not

respond to Defendant's argument.

Under section 600.5805(10), "[t]he period of limitations is 3 years after the time of the

death or injury for all other actions to recover . . . for injury to a person or property."  "M.C.L.

[section] 600.5827 provides that a 'claim accrues at the time the wrong upon which the claim is

based was done regardless of the time when damage results." *Garg v. Macomb Co. Community*

*Mental Health Servs.*, 472 Mich. 263, 282 (2005).  Therefore, in an age discrimination case, an

action must be brought within three years of the discriminatory act.  In the instant case,

Plaintiff's Complaint was filed March 24, 2004.  As a result, any discriminatory acts which

occurred before March 24, 2001 are barred by the three year statute of limitations.  Accordingly,

the Court finds that discriminatory acts against Plaintiff occurring before March 24, 2001 are

barred by the statute of limitations and those acts will not be viewed when considering the

motion at bar.

                     **3.**    **Direct Evidence**

When direct evidence of discrimination is present, the plaintiff does not need to meet the requirements of the *McDonnell Douglas prima facie* case. *Lapointe v. United Autoworkers Local 600*, 8 F.3d 376, 379 (6th Cir. 1993). However, "[i]t is the rare situation where direct evidence is available." *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997).

The direct evidence in the instant case derives from statements made by McCurry to Plaintiff and Ciaramitaro. Plaintiff only offers McCurry's statements as direct evidence of age discrimination by Defendant. Defendant argues that McCurry did not make the decision to select another individual for the Ann Arbor position. Defendant claims that McCurry retired six months before Cassar made the decision to select Jay Shapiro for the Ann Arbor position. Therefore, Defendant asserts that Plaintiff cannot establish a causal link between the alleged failure to promote Plaintiff and McCurry's statements or conduct.

Plaintiff argues that McCurry expressed to him his belief that age is a negative factor in the work environment. Plaintiff also offers evidence of comments made by McCurry directly to him and comments made to a co-worker. Plaintiff claims that these comments are direct evidence of discriminatory intent and reflect a corporate state of mind or discriminatory atmosphere. Though McCurry's comments were made prior to the adverse decision, the comments demonstrate an age-biased mindset, which is not limited to a particular employment decisions.

In age discrimination cases, courts look at whether the discriminatory comments were: 1) made by a decision-maker or by an agent within the scope of his employment; 2) related to the decision-making process; 3) more than merely vague, ambiguous, or isolated remarks, and; 4) proximate in time to the act of termination. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325,

12

1330 (6th Cir. 1994). "[F]ederal courts have consistently held that isolated or vague comments made by non-decisionmakers long before the adverse employment decision is made are not probative of an employers' discriminatory motivation." *Krohn v. Sedgwick James of Mich., Inc*., 244 Mich. App. 289, 300 (2001). While remarks made by a non-decisionmakers "are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." *Johnson v. The Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003).

In effect, Defendant argues that McCurry's statements are stray remarks[6] and not evidence of discriminatory animus. Plaintiff alleges that McCurry made discriminatory statements to him and to others. "When a plaintiff claims that an employer's remark constituted direct evidence of discrimination, a court must examine the employer's remark in the context in which it was made and determine whether the challenged remark may be characterized as a mere 'stray remark,' or may . . . be viewed as . . . direct evidence." *Pistorio v. Warner Electric, Inc*, 2005 WL 2372001, *1 (Mich. App. Sept. 27, 2005) (unpublished).

Plaintiff points to two discriminatory statements made to him by McCurry. When Plaintiff expressed his interest in the Ann Arbor SGM position to McCurry, McCurry stated Plaintiff "had limited potential because of [his] age." (Pl.'s Resp. 12; Pl.'s Resp. Ex. 5, Pl.'s Dep. 56: 22-23). Plaintiff also claims he was told by McCurry not to "post for [a] managers job

---

[6] "A simple definition of an inadmissible stray or isolated remark is not feasible and would not facilitate a proper determination of its relevance at trial. [The remark in question] may range from an innocuous remark made by an employee with no involvement in the alleged adverse employment action long before such action takes place[,] to a blatantly discriminatory comment made by a decision-maker at the time the adverse action occurs." *Krohn*, 244 Mich. App. at 297. Whether or not a comment is a stray remark "depends on where it falls on that continuum." *Id*.

13

because of [Plaintiff's] age and limited future potential as a store manager."  (Pl's Resp. 12; Pl.'s Resp. Ex. 2, Letter dated 11/02/01).

Plaintiff also points to a discriminatory statement made by McCurry to Ciaramitaro. Plaintiff asserts that "McCurry stated that it was Ciaramitaro's age which prevented him from obtaining a favorable job in the reorganization."  (Second Am. Compl.  ¶ 11).  Plaintiff further claims that McCurry stated that "Paul's age, I mean I wouldn't want to put Paul in a store at his age and do him in."  (Pl. Resp. 12).  After McCurry made these comments, McCurry stated, "I guess, Paul, you can now sue me for age discrimination."  (Pl.'s Resp. Ex. 8, Ciaramitaro Dep. 9: 6-7).

Plaintiff cites case law in support of the proposition that statements concerning management's preference to hire younger people is relevant in an age discrimination case, and, that managers in high positions have the power to shape attitudes and policies of their lower managers.  However, Plaintiff's cases are not on point.  For example, in *Lapointe v. United Autoworkers Local 600*, 8 F.3d 376 (6th Cir. 1993), the Sixth Circuit found that the direct evidence[7] provided by the Plaintiff was enough to survive summary judgment.  8 F.3d at 380. The plaintiffs in *Lapointe* were two older employees were forced out of their positions and replaced by younger individuals.  Both terminated individuals testified that ageist comments were made by their bargaining unit president, as well as by other members of the president's

_____

[7] The plaintiff in *LaPointe* argued that he was told by the bargaining unit president was "going to get the older employees out."  *Id*. at 379.  Other employees screamed at plaintiff that he should retire.  *Id*. at 380.  In addition, the bargaining unit president told him that people with 30 years [on the job] should let the younger guys have their jobs.  *Id*.  Plaintiff was continuously harassed about being an "oldtimer."  *Id*.  Another employee also went through the same type of experience as the plaintiff.  *Id*. at 379.

14

caucus, who had the authority to fill union positions created by the collective bargaining agreement.  *Id.* at 377, 379-80.  To avoid the ridicule and harassment of his unit president, the plaintiff took advantage of a special early retirement program.  *Id* at 377.   In the instant case, Plaintiff has only put forth comments made to him and Ciaramitaro by a non-decisionmakers. Additionally, Ciaramitaro does not make any age discrimination claims himself, and further states that he believes McCurry's comments to be a joke between them and does not see any malice or intent to discriminate against him.  (Pl.'s Resp. Ex. 8, Ciaramitaro Dep. 6: 10-12). Further, in *LaPointe*, the plaintiff was forced out of his position as a direct result of the comments by the unit president.  Here, the comments did not directly lead to Defendant hiring another individual, as the comments were not made by a decision-maker, nor did McCurry's comments lead to Plaintiff terminating his relationship with Defendant.

Plaintiff also cites *Ercegovish v. Goodyear Tire and Rubber Company*, 154 F.3d 344 (6th Cir. 1998), which held that "discriminatory statements may reflect a cumulative managerial attitude among defendant employer's managers that has influenced the decision-making process for a considerable time."  *Id.* at 356.  Thus, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decision-making process in another context."  *Id.*  However, the comments in *Ercegovish*[8] were mostly made by an individual who had input in the discriminatory decision.  Other individuals in *Ercegovish* also made discriminatory statements regarding age.  In the instant case, unlike in

---

[8] The comments at issue were: that "this company is being run by a white haired old men waiting to retire and this has to change" and that the decision-maker said that he "does 'not want any employee over 50 years old on his staff.'" *Id.* at 355.  There were also age based remarks made by other members of the plaintiffs sales division.  *Id.* at 356.

15

*Ercegovish*, the direct evidence consists of comments made by a non-decisionmakers to Plaintiff and to one other employee.  Unlike in *Ercegovish*, only McCurry made the discriminatory statements here.

The Court finds that Plaintiff does not have direct evidence of discrimination.  *See Krohn*, 244 Mich. App. 289 (2001).  Applying *Cooley*, McCurry was not the decision-maker in Defendant's decision to place someone other than Plaintiff in the vacant Ann Arbor SGM position.  Moreover, McCurry's statements were not related to the decision-making process.  Though McCurry's statements were more than merely vague, ambiguous, or isolated remarks, his statements were not proximate in time to the act of termination.  It is unclear exactly when the discriminatory statements were made by McCurry to Plaintiff, but they were made before November 2, 2001 - the date of Plaintiff's letter to Merle Grizzell - which was written a full eight months prior to Shapiro filling the Ann Arbor position.

The Court finds that McCurry's statements are stray remarks and not direct evidence of age discrimination.  Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's Title VII and ELCRA claims under a theory of direct evidence.

### 4.    Circumstantial Evidence

Defendant contends that Plaintiff, as a matter of law, cannot establish a *prima facie* case of age discrimination based upon a failure to transfer/promote.  To establish a *prima facie* case of unlawful discrimination based upon age discrimination, a plaintiff must prove that (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he or she was rejected, a substantially younger applicant was selected. *Burzynski v. Cohen*, 264 F.3d 611, 622

16

(6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998)).

A showing that similarly situated non-protected employees were treated more favorably may

satisfy the fourth element. *Id.* The same standard is used to satisfy a *prima facie* case under the

Elliot-Larsen Civil Rights Act. *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 698

(1997).

Defendant asserts that Plaintiff can not establish evidence that he was qualified for the

Ann Arbor position. (Def.'s Br. 16-17). Defendant claims that an inference of unlawful

discrimination does not arise merely because an employer chooses between two candidates who

meet the minimum qualifications for the position. (*Id.* at 16). Defendant argues that Plaintiff

was not qualified to be the store manager of an "A" store and his ineffectiveness at the Randall

Park store emphasizes Plaintiff's lack of SGM qualifications. (*Id.* at 17). Defendant also argues

that Plaintiff cannot prove that the alleged discriminatory animus was causally related to the

adverse employment action. (*Id.* at 16).

Plaintiff argues that Defendant only disputes whether he was qualified for the position

and does not challenge Plaintiff's ability to establish the other *prima facie* elements. (Pl.'s Resp.

16). Plaintiff contends that he was qualified for the Ann Arbor position because he has 30 years

of retail experience and he has been successful with Sears since 1990. (*Id.* at 17). Plaintiff avers

that he was qualified enough to be the interim manager at Lincoln Park, a store that is larger than

the one located in Ann Arbor. (*Id.*).

Defendant replies that Plaintiff cannot second-guess Cassar's business judgment. (Def.'s

Reply 3). Defendant claims that Cassar's business judgement was shared by a number of

witnesses and was a good decision in light of Plaintiff's later failure at the Randall Park store.

Defendant argues that Plaintiff abandoned all promotion claims in his Response, except for the Ann Arbor Store Manager position.  (Def.'s Reply 1).

> a.       *Prima facie case*

"At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (2003) (emphasis added).  To satisfy the qualification prong of the plaintiff's *prima facie* case, plaintiff must only present credible evidence that he or she was minimally qualified in the relevant field.  *Id*. at 575-576.  "[T]he inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills."  *Id*. a 576.

Plaintiff has satisfied the first, second and fourth *McDonnell Douglas* elements of a *prima facie* case.  Plaintiff is over forty years old, was subject to an adverse employment action as he was not hired for the Ann Arbor store manager position, and that position was given to a substantially younger applicant.  Defendant argues that Plaintiff failed to satisfy the third element, i.e., whether he was qualified for the position.  In this regard, Defendant avers that Plaintiff was not the best candidate for the position.

Defendant argues that Plaintiff's unsatisfactory performance at the Randall Park store and fact that Plaintiff "walked off" the job due to stress, shows that Plaintiff was not qualified to be a store manager.[9]  However, the Court finds that Plaintiff meets the minimum qualifications of

---

[9] Randall Park was a "tough store to run," "trending down," and had been one of the worst stores in the Cleveland District, according to Cleveland DGM Rob Robinette.  (Def.'s Br. Ex. 2, Robinette Dep. 6, 8, 17).  In addition, Plaintiff was the only person to apply for the open Randall Park store manager position.  (*Id*. at 16).

18

a store manager.  Plaintiff is a college graduate, has thirty years of retail experience, and was a store manager for J.L. Hudson for two years, the President of the Dayton-Hudson's jewelry division, Charles Warren and Co., and the director of store operations for MC Sporting Goods. Additionally, Plaintiff was a successful employee for Defendant since 1990.  The positions Plaintiff held with Defendant were: a district business manager for apparel; the district manager for Men's, Kids, and Footwear; a HRDM; as well as the interim manager at the Lincoln Park store.  Further, Plaintiff did have some success at the Randall Park store.  Plaintiff also claims that he doubled customer service scores, increased miscellaneous income and reduced associate turnover.  (Pl.'s Resp. Ex. 1, Greenfield's Resume 1).

Accordingly, the Court finds that Plaintiff's qualifications meet the minimum objective criteria required for employment in the relevant field, and therefore, Plaintiff has established a *prima facie* case of age discrimination.

### b.    Pretext

Once Plaintiff establishes a *prima facie* case, Defendant must come forward with a legitimate, non-discriminatory explanation for its adverse employment decision.  *Burdine*, 450 U.S. at 254.  Here, Defendant contends that Plaintiff was legitimately less qualified than Shapiro for the store manager position.

In response to Defendant's legitimate, non-discriminatory reason for the decision, the plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision."  *Id*. at 256.  A showing that the employer's proffered explanation is unworthy of credence can establish that the plaintiff was the victim of intentional discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000).  The

*prima facie* case, and the inferences that can be drawn from the *prima facie* case, can be

considered when looking at whether the defendant's explanation was pretextual.  *Id.*  Under Title

VII:

> Proof that the defendant's explanation is unworthy of credence is simply one form
> of circumstantial evidence that is probative of intentional discrimination, and it
> may be quite persuasive. . . . In appropriate circumstances, the trier of fact can
> reasonably infer from the falsity of the explanation that the employer is
> dissembling to cover up a discriminatory purpose. . . . Moreover, once the
> employer's justification has been eliminated, discrimination may well be the most
> likely alternative explanation, especially since the employer is in the best position
> to put forth the actual reason for its decision. . . . Thus, a plaintiff's prima facie
> case, combined with sufficient evidence to find that the employer's asserted
> justification is false, *may* permit the trier of fact to conclude that the employer
> unlawfully discriminated.

*Reeves*, 530 U.S. at 147-48 (emphasis added).[10]   "The Supreme Court of Michigan and most

federal courts of appeals follow the 'intermediate position' for determining 'the proper summary

judgment disposition standard for employment discrimination claims under Michigan's Civil

Rights Act.'" *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (2002) (citing *Lytle*, 458

Mich. 153, 175 (1998)).  "To raise a genuine issue of fact as to pretext and defeat a summary

judgment motion under the intermediate position, the plaintiff must show one of the following:

(1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually

---

[10] However, one court in the Eastern District of Michigan held that Michigan law differs from
federal law, as there appears to be a "pretext plus" requirement.  *See Plegue v. Clear Channel
Broad., Inc.*, 2005 WL 3133508, *10 n.14 (E.D. Mich. Nov. 22, 2005) (Rosen, J.) ("Michigan
law['s intermediate position] differs from federal law . . . Under federal law, there is no "pretext
plus" requirement."); *Contra, Nizami v. Pfizer Inc.*, 107 F. Supp. 2d 791, 803 (2000) (Rosen, J.)
("The Michigan Supreme Court recently affirmed its adoption of what it termed the
'intermediate position' for determining whether a plaintiff's showing of pretext is sufficient to
survive a motion for summary judgment. . . . In its recent decision in *Reeves*, the U.S. Supreme
Court adopted a similar 'intermediate position' in a case arising under the federal Age
Discrimination in Employment Act.").

motivate the action, or (3) that the proffered reason was insufficient to motivate the action." *Id*.
(internal citations omitted).

The Court finds that Plaintiff has met his burden of showing pretext. Defendant's reason
for not hiring Plaintiff as the Ann Arbor SGM was that he was less qualified than Shapiro.[11]
However, Plaintiff had previous work experience as a manager for a J.L. Hudson store with store
sales around 25 million dollars. Plaintiff also had significant soft line apparel experience, which
was a majority of the sales and profit of the Ann Arbor store.[12] Plaintiff had a combined 32
years of apparel background and an extensive management background. While working as a
district merchant for soft lines, Plaintiff also interacted closely with individuals in hard lines.
Further, Plaintiff was referred to by Byrd as the "advantaged candidate" for the Ann Arbor
position, because Plaintiff was already performing a job that Cassar was looking to fill.
Additionally, Plaintiff was told by Cassar that he would be a great candidate for the position.

Shapiro's background is less compelling. Prior to being assigned the Ann Arbor
position, Shapiro's only store manager experience was with Radio Shack. Stores at Radio Shack
averaged 2,500 square feet, which was not comparable in size to the 100,000 square feet that
Defendant's stores averaged. In addition, the largest number of employees in any Radio Shack
store was fourteen, compared to an average of 100 employees at Defendant's stores. The
products sold at Radio Shack were strictly electronics. Prior to being the store manager in Ann

---

[11]   The Ann Arbor store was a top store for Defendant with roughly 35 million dollars in
sales.

[12] Plaintiff was told by Cassar that Defendant planned to bring Land's End brand apparel to
the Ann Arbor store. Land's End had recently been purchased by Defendant at the time.
Bringing Land's End to the Ann Arbor store would seem to have favored promoting Plaintiff as
the SDM there because of his soft line experience.

Arbor, Shapiro's other positions with Defendant were: the region manager in New York for the Office Center[13] beginning in 1991, the district business manager of Brand Central for Albany in 1993, and Facilities Planning Manager in 1996.  Shapiro's time at Radio Shack, and in the above positions for Defendant, did not expose him to hands-on soft lines experience.  In fact, Shapiro had to spend a great deal of time learning the apparel business from Cassar after his promotion to store manager.

While "[t]he fact that a court may think that the employer misjudged the qualifications of the applicant[, i.e., used bad business judgment,] does not in itself expose him to Title VII liability, . . . this may be probative of whether the employer's reasons are pretexts for discrimination."  *Wexler*, 317 F.3d at 577 (citing *Burdine*, 450 U.S. at 259); *see In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988) ("[T]he reasonableness of the employer's reasons may of course be probative of whether they are pretexts."); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate - something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.").

Viewing the evidence in a light most favorable to Plaintiff, the Court concludes that a reasonable jury could infer from the evidence that Plaintiff's age was a factor in Defendant's decision to promote Shapiro to the Ann Arbor SGM position..  "Determining the weight and credibility of witness testimony . . . has long been held to be the part of every case that belongs

---

[13] The Office Center sold business equipment.

to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *United States v. Scheffer*, 523 U.S. 303, 313 (1998). Plaintiff's qualifications, and Defendant's reasoning that Plaintiff was less qualified than Shapiro, could allow a reasonable jury to find that Defendant's supplied reason for failing to promote Plaintiff had no basis in fact or was insufficient to justify choosing Shapiro over Plaintiff.

The Court finds that Plaintiff's pretext evidence, taken together with the evidence establishing his *prima facie* claim, if believed by a jury, could lead to a finding that his age was a reason for Defendant's decision not promote him to the Ann Arbor store manager position. Accordingly, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's Title VII and ELCRA claims under a theory of circumstantial evidence.

### 5.    Retaliation

Defendant argues that there is no causal connection between Plaintiff's letter to Grizzell concerning McCurry and the decision not to promote Plaintiff to the Ann Arbor SGM position, and therefore there can be no retaliation. Defendant asserts that there is no evidence that Grizzell shared Plaintiff's letter or its contents with anyone involved in the denial of Plaintiff for the Ann Arbor store manager position. Further, Defendant contends that Plaintiff cannot establish that the protected activity was a significant factor in the adverse employment decision.

Plaintiff responds that decision-makers were aware of his protected activity. Plaintiff claims that Winfrey Smith, the Detroit DGM, knew about Plaintiff's letter. Plaintiff also claims that Cassar, the Toledo DGM, learned of his complaint though general vibes in the department.

Defendant replies that while Cassar might have been aware of Plaintiff's investigation of

McCurry's statement, Cassar was unaware of Plaintiffs's memo to Grizzell and Plaintiff's Complaint alleging discrimination by McCurry against Plaintiff.  Defendant also asserts that even if Cassar had knowledge of Plaintiff's memo to Grizzell, there is no evidence of a causal connection to Cassar's promotion decision.  Defendant supports this assertion with the fact that Cassar's decision to promote was made seven months after Plaintiff's memo.  Defendant also avers that Plaintiff was promoted to the Randall Park store, a decision Cassar supported, ninety days after Shapiro was named the Ann Arbor store manager.

The ELCRA prohibits retaliation against an individual *because that person* participates in enforcement procedures under the Act.  M.C.L. § 37.2701(a) (emphasis added).  A *prima facie* case of retaliation can be established if a plaintiff proves: (1) that he was engaged in a protected activity; (2) that the protected activity was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *Pena v. Ingham County Rd. Comm'n*, 255 Mich. App. 299, 310-11 (2003).

In the instant case, Plaintiff has not shown elements two and four of his *prima facie* case. Plaintiff has not offered evidence showing that Cassar knew about the letter to Grizzell. Additionally, Plaintiff has not shown that there was a causal connection between the letter and Defendant's failure to promote.  Not only did the adverse employment action occur seven months after Plaintiff's note to Grizzell, but Plaintiff was promoted to a SGM position a month and a half after Shapiro's promotion.  Even viewing the facts in a light most favorable to the Plaintiff, there is not enough of a causal connection between the two events for the Court to deny summary judgment on this claim.

24

Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim.

## III.     CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.  The Court GRANTS Defendant's Motion for Summary Judgment on:

1.     Plaintiff's Title VII and ELCRA claims under a theory of direct evidence.

2.     Plaintiff's retaliation claim.

3.     Plaintiff's Ohio Civil Rights Act claims for age discrimination and retaliation.

The Court DENIES Defendant's Motion for Summary Judgment on Plaintiff's Title VII and ELCRA claims under a theory of circumstantial evidence.

**SO ORDERED.**

_____

s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 2, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 2, 2006.

s/Jonie Parker_____
Case Manager