**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALLEN GREENFIELD,
an individual,

    Plaintiffs,

            CASE NO. 04-71086

vs.

            PAUL D. BORMAN
SEARS, ROEBUCK AND CO.,    UNITED STATES DISTRICT JUDGE
a foreign corporation,

    Defendant
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SEARS' MOTION FOR RECONSIDERATION

Now before the Court is Defendant Sears' Motion for Reconsideration. Having considered the entire record and having held a hearing on this motion, for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant Sears' Motion.

**I.  PROCEDURAL HISTORY**

The specific facts of the case are set forth in detail in the Court's previous opinion, *Greenfield v. Sears, Roebuck & Co.*, Case No. 04-71086, 2006 U.S. Dist. LEXIS 8064 (E.D. Mich. Mar. 2, 2006) (unpublished), and are not repeated below. Plaintiff filed a four (4) count Original Complaint[1] on March 24, 2004 alleging age discrimination under Michigan and Ohio state laws. Plaintiff filed his First Amended Complaint two months later. On June 14, 2004,

---

[1] Count I:  Violation of the Elliot-Larsen Civil Rights Act for Age Discrimination
   Count II:  Violation of the Ohio Civil Rights Act for Age Discrimination
   Count III: Violation of the Elliot-Larsen Civil Rights Act for Retaliation
   Count IV: Violation of the Ohio Civil Rights Act for Retaliation

Plaintiff filed a charge of age discrimination with the EEOC. (Second Am. Compl. ¶ 63). The EEOC issued Plaintiff a Right-to-Sue letter on July 9, 2004. Plaintiff then filed his Second Amended Complaint on September 10, 2004, adding a violation of the ADEA as a fifth count. Defendant filed its Motion for Summary Judgment on September 23, 2005.

In its March 2, 2006 Opinion, the Court granted in part and denied in part Defendant's Motion for Summary Judgment. The Court granted Defendant's Motion for Summary Judgment on: (1) Plaintiff's Title VII and ELCRA claims under a theory of direct evidence; (2) Plaintiff's retaliation claim; and (3) Plaintiff's Ohio Civil Rights Act claims for age discrimination and retaliation. The Court denied Defendant's Motion for Summary Judgment on Plaintiff's Title VII and ELCRA claims under a theory of circumstantial evidence.

On March 16, 2006, Defendant timely filed the instant Motion for Reconsideration. The Court allowed Plaintiff to respond, which he did on April 7, 2006.

**II.   ANALYSIS**

    **A.   Standard**

Pursuant to Rule 7.1(g)(3) of the Local Rules for the Eastern District of Michigan, a motion for rehearing or reconsideration may be filed within ten days after the entry of the decision to which it objects. *See also* Fed. R. Civ. P. 59(e) (allowing a party to file a Motion to Alter or Amend Judgment within ten days of entry of the Judgment). A motion for reconsideration will be granted if the moving party demonstrates that the court's order contains "a palpable defect by which the court and parties have been misled," and that "correcting the defect will result in a different disposition of the case." L.R. 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest or plain. *Marketing Displays, Inc. v.*

2

*Traffix Devices, Inc*., 971 F. Supp. 262, 278 (E.D. Mich. 1997) (internal citation omitted).

### B. Discussion

Defendant seeks reconsideration of the Court's March 2, 2006 Order granting in part and denying in part Defendant's Motion for Summary Judgment.  Defendant argues that palpable defects caused the Court to deny summary judgment without regard to applicable law and undisputed facts in the record.  Defendant asserts that palpable defects arose because the Court denied an unplead Title VII claim, used the incorrect date for the commencement of the statute of limitations on Defendant's ADEA claim, applied the incorrect pretext standard, and denied Defendant's motion without any record support.  The Court finds that Defendant properly showed a palpable defect in the Courts ruling on Plaintiff's ADEA claim and the unplead Title VII claim, and Plaintiff has shown that correcting those defects would result in a different disposition.   However, Court finds that the correct pretext standard was used and that Defendant's motion was denied with support from the record.

### 1. Unplead Title VII Claim

Defendant argues that the Court denied its Motion for Summary Judgment on Plaintiff's Title VII claim when Title VII was not a plead claim.  The Court finds that its reference to Title VII, in denying Defendant's Motion for Summary Judgment on a theory of circumstantial evidence, was a typographical error.  The Court also finds that Plaintiff did not plead a Title VII claim and therefore a Title VII claim is not available to Plaintiff.  It is hereby ordered that Defendant's Motion for Reconsideration as to the unplead Title VII claim is GRANTED and that the unplead Title VII claim is REMOVED as a surviving cause of action.

### 2.     ADEA Claim

Defendant argues that the Court erred in ruling that Plaintiff filed a timely charge of age discrimination with the EEOC.  The Court found that Plaintiff's EEOC charge was timely because the EEOC charge stated September 26, 2003 as the last date of discrimination.  However, Defendant contends, and Plaintiff concedes, that Plaintiff has limited his ADEA claim to the denial of the Ann Arbor store manager position in June of 2002.  As a result of Plaintiff limiting his claim to the denial of the Ann Arbor store manager position, Plaintiff's June 14, 2004 EEOC charge was not timely, as more that 300 days elapsed since the date of the alleged unlawful act.  Therefore, the Court finds that Defendant's Motion for Reconsideration is GRANTED as to Plaintiff's ADEA claim, and Plaintiff's ADEA claim is DISMISSED.

### 3.     Pretext Requirement

Defendant argues that the Court applied the incorrect pretext standard and denied Defendant's Summary Judgment Motion without any record support.  Defendant avers that instead of applying the Michigan standard, the court cited federal law.  Defendant asserts that under Michigan law, the consideration of a protected characteristic must be a motivating factor.

In its opinion, this Court opined that Michigan and the Sixth Circuit follow the 'intermediate position' when determinating summary judgment on an Michigan Elliot-Larsen Civil Rights Act claim.  *Cicero v. Borg-Warner Auto., Inc*, 280 F.3d 579, 589 (2002).  This Court also stated that to raise a genuine issue of fact as to pretext, a plaintiff must show one of the following: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the action, or (3) that the proffered reason was insufficient to motivate the action."  *Id*.

> Disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition *only if* such disproof *also* raises a triable issue that discrimination animus was a motivating factor underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for . . . discrimination.

*Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 438-39 (6th Cir. 2002) (citing *Lytle v. Malady*, 458 Mich. 153 (1998) (emphasis added).

Still, Defendant contends that the Court failed to show that Plaintiff's protected status was a 'motivating factor.' However, any of the three *Cicero* methods used to show pretext can permit a reasonable fact finder to conclude that age discrimination motivated the employer. In its opinion, this Court held:

> "Plaintiff's qualifications, and Defendant's reasoning that Plaintiff was less qualified than Shapiro, could allow a reasonable jury to find that Defendant's supplied reason for failing to promote Plaintiff had *no basis in fact* or was *insufficient to justify choosing Shapiro over Plaintiff*. . . . Plaintiff's pretext evidence, taken together with the evidence establishing his *prima facie* claim . . . could lead to a finding that [Plaintiff's] age was a reason for Defendant's decision not to promote him."

*Greenfield v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS at *37-*38 (emphasis added). Thus, this Court found that when viewing the facts of this case in a light most favorable to the Plaintiff, a jury could find that Defendant's reason for failing to promote Plaintiff had no basis or was an insufficient reason, thereby leaving Plaintiff's age as the only remaining motivating reason, based on the facts, for Defendant's decision to promote Shapiro over Plaintiff. Accordingly, Plaintiff's disproof of Defendant's articulated reasons raises a triable issue that discrimination was a motivating factor underlying Defendant's failure to promote Plaintiff.

Defendant also contends that a number of facts relied on by this Court were not in the record. Defendant first claims that the Court ignored its citations to the record, and instead

5

stated that "Cassar was looking for a candidate who had hard and soft line experience." (Def. Br. 13). Defendant avers that Cassar made that statement about his ideal candidate, and, according to Cassar, Plaintiff did not "fit the bill." (*Id.*). However, regardless of whether Defendant provided citations showing that Cassar thought Plaintiff did not fit the bill,[2] Cassar testified, in general, that he was looking for a candidate who had hard and soft line experience.

> Q. Why did you term it a courtesy interview?
> A. I was looking for [a] certain background, particular background, having apparel [i.e., soft lines,] background and hard lines background.

(Cassar Dep. 51: 7-10).

> Q. Okay. And I think you said, looking at my notes, you were looking for somebody with apparel background and hard lines background?
> A. Correct.

(Cassar Dep. 65: 2-5).

Defendant also asserts that the Court referenced facts not in the record when it stated "Plaintiff had extensive experience in soft lines," and "Plaintiff also had years of experience running large retail stores and while working as a district merchant for soft lines, interacted closely with those in hard lines." (Def. Br. 14). Contrary to Defendant's argument, these statements are also based on facts in the record. Plaintiff had previous work experience at a large retail store, J.L. Hudsons, with millions of dollars in sales. (Pl.'s Summ. J. Resp. Ex. 1, Greenfield Resume). He was a General Store Manager for two years at J.L. Hudsons (which, among other things, sold men's and women's ready-to-wear) and the President of Dayton-Hudson's Charles W. Warren Jewelry Division. (*Id.*). Overall, Plaintiff had 32 years of

---

[2] Cassar testified that Plaintiff had the soft lines background, but not the hard goods background. (Cassar Dep. 51: 11-15). However, Cassar also testified that Shapiro had the necessary hard lines background, but not the soft lines background. (Cassar Dep. 65: 6-9).

experience in apparel and management, including six years as District Manager of two different departments within Sears, as well as a Human Resources District Manager and an Interim Store Manager with Sears.  Additionally, Plaintiff testified that he interacted closely with those in hard lines.  As a District Manager, every month he and the other District Managers would meet and "go through all of the businesses, whether it was hard goods or Apparel."  (Greenfield Dep. 73: 14-18).  Further, Plaintiff testified that through these meetings, he "knew [the hard line] promotions, cost structure, how [hard lines was] making money," and how the hard line floors were set up.  (*Id*. at 73: 19-22).  Plaintiff also gained experience and knowledge in hard lines while managing Defendant's Lincoln Park store as interim store manager.

Another statement from this Court's opinion identified by Defendant as having no record support was that "profit is much greater from the soft lines than the hard lines."  While it is true that this statement was made by Plaintiff in his response without citing record support, the statement was uncontradicted.  In its Brief, Defendant stated that seventy percent of the Ann Arbor store's sales came from hard lines. (Def.'s Summ. J. Br. 14; Shapiro Dep. 32: 17-18).  However, sales are distinct from profit and thus one statement does not contradict the other.[3]  While Plaintiff did not reference a cite for his claim, Defendant did not dispute this statement.  It is also important to note that even if seventy percent of the Ann Arbor store's past sales were from hard lines, the addition of the Lands End brand, recently purchased by Defendant, would favor promoting Plaintiff due to his soft line experience.  Plaintiff wrote in a June 17, 2002 letter to Byrd that "[Cassar] was most encouraged about [Plaintiff's] extensive apparel background and

---

[3] Profits derived from soft line sales would be greater than hard lines, even when seventy percent of store sales come from hard lines, where the profit margin for apparels far exceeds that of hard lines.

7

. . . [Cassar though] that would be an asset in Ann Arbor because the Ann Arbor unit could become the best Lands End store in his whole District." (Greenfield Let. 6/17/02).

Defendant also avers that the Court ignored Sharpiro's hard lines experience and stated that "Shapiro had to spend a great deal of time learning the apparel business from Cassar after his promotion," which Defendant contends had no record support. Contrary to Defendant's claim, this statement does have support.

> Q. How did you learn the apparel side of the business?
> A. [Shapiro:] Well, from being involved in it everyday. . . . Larry [Cassar] used to spend a great deal of time when he visited my store walking through apparel.

(Shapiro Dep. 45: 9-16).

> Q. How did you train [Shapiro] for the apparel part of the job that he had never performed?
> A. [Cassar:] Through store visits, his in-store staff, a lot of on-line [training], [and] store manager training hands on.

(Cassar Dep. 54: 3-7).

Finally, Defendant argues that the Court incorrectly stated that "Plaintiff was referred to Byrd as the 'advantaged candidate' for the Ann Arbor position, because Plaintiff was already performing a job that Cassar was looking to fill." (Def.'s Br. 16). Contrary to Defendant's argument, Byrd testified that Plaintiff "had the better opportunity [for the job] because he was the known entity. He was in stores. . . . He was performing in a job that Mr. Cassar was looking to fill . . ." (Byrd Dep. 40: 3-8). Byrd also testified that her "sense [was] that Mr. Greenfield was probably the advantaged candidate" because he could have conversations and get feedback from Cassar that Shapiro could not have done in his prior job. (*Id.* at 40: 14-18). Moreover, contrary to Defendant's contention, Byrd did not recommended Shapiro over Plaintiff for the

8

Ann Arbor position. Byrd suggested Sharpiro as another candidate so Cassar would be able to compare and contrast the candidates in deciding who was the best individual for the job. (Byrd Dep. 41: 4-7).

> A. I didn't suggest [one candidate] over the other. I said I suggested another candidate. I think it's very, very tough to make a good evaluation and a good decision when all you have is one person to consider for something.

(*Id.* at 40: 25; 41: 1-4).

Defendant also asserts that the Court had no basis for its assertion that Shapiro's background was less compelling. (Def. Br. 15). Although Defendant appears to merely to disagree with the Court's decision, the Court will address the claim. Prior to Shapiro's promotion to the Ann Arbor store manager position, Shapiro's only store manager experience was with Radio Shack. As stated in the Court's summary judgment opinion, the size of the store and the number of employees that Shapiro manager was far less than that of Defendant's stores. *See Greenfield*, 2006 U.S. Dist. LEXIS at *35. Additionally, Radio Shack specializes in electronics. Shapiro did not manage a store with other hard line goods, such as appliances or power tools. Shapiro's other positions within Defendant's corporation were: (1) as Regional Manager of the New York Office Center, which only sold business equipment;(2) as District Business Manager of Brand Central for Albany, which is the "home electronics, home appliance portion of the Sears business" (Shapiro Dep. 20: 19-20); and (3) Facilities Planning Manager, where Shapiro planned the physical layout of the merchandising to make the best use of space within the store. (Shapiro Dep. 24: 12-14). None of these positions exposed Shapiro to hands-on soft lines experience. Furthermore, while Plaintiff testified that he had hard line experience, *supra*, Shapiro testified that he did not have a great deal of hands-on experience. (Shapiro Dep.

9

40: 1-2).

As mentioned above, Defendant has failed to demonstrate the palpable error required for reconsideration on the pretext and record support issues, and appears merely to disagree with this Court's decision. In a light most favorable to the Plaintiff, the facts support a jury finding that Defendant had no basis in fact or was insufficient to justify choosing Shapiro over Plaintiff and that age was a motivating factor. Accordingly, Defendant's Motion for Reconsideration is DENIED as to Defendant's pretext and lack of record support arguments.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Reconsideration. The Court GRANTS Defendant's Motion as to the unplead Title VII claim and the ADEA claim. The Court DENIES Defendant's Motion as to pretext and lack of record support.

S/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 24, 2006.

S/Jonie Parker  
Case Manager