**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALLEN GREENFIELD,
an individual,

                 Plaintiffs,

vs.

SEARS, ROEBUCK AND CO.,
a foreign corporation,

                 Defendant

_____/

CASE NO. 04-71086

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE**
**ADMISSION OF AND TESTIMONY REGARDING THE ABANDONED AND**
**DISMISSED FAILURE TO PROMOTE CLAIMS (DKT. NO 35);**
**(2) GRANTING DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND**
**ARGUMENT REGARDING: (a) ALLEGED STRAY REMARKS BY MCCURRY AND**
**CASSAR, (b) PLAINTIFF'S NOTES REGARDING THOSE ALLEGED STRAY**
**REMARKS, AND (c) PLAINTIFF'S DISMISSED RETALIATION CLAIM (DKT. NO.**
**38);**
**(3) DENYING DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE PLAINTIFF**
**FROM TESTIFYING REGARDING SHAPIRO'S QUALIFICATIONS (DKT. NO. 37)**

Now before the Court is Defendant Sears' Motions *In Limine* to: (1) Exclude the

Admission of and Testimony Regarding the Abandoned and Dismissed Failure to Promote

Claims (Docket No. 35); (2) Exclude Evidence and Argument Regarding: (a) Alleged Stray

Remarks by McCurry and Cassar; (b) Plaintiff's Notes Regarding Alleged Stray Remarks; and

(c) Plaintiff's Dismissed Retaliation Claim (Docket No. 38); and (3) Preclude Plaintiff from

Testifying Regarding Shapiro's Qualifications (Docket No. 37). The Court held a motion

hearing on September 7, 2006. Having considered the entire record and having held a hearing on

this motion, for the reasons that follow, the Court:

1

(1)     GRANTS Defendant's Motion *In Limine* to Exclude the Admission of and Testimony Regarding the Abandoned and Dismissed Failure to Promote Claims;

(2)     GRANTS Defendant's Motion *In Limine* to Exclude Evidence and Argument Regarding: (a) Stray Remarks by McCurry and Cassar; (b) Plaintiff's Notes Regarding Alleged Stray Remarks; and (c) Plaintiff's Dismissed Retaliation Claim. Additionally, the Court excludes any of Plaintiff's notes regarding the above remarks or Plaintiff's retaliation claim;

(3)     DENIES Defendant's Motion *In Limine* to Preclude Plaintiff from Testifying Regarding Shapiro's Qualifications.

## I.     FACTS

In this action, Plaintiff filed a four (4) count Original Complaint[1] on March 24, 2004 alleging age discrimination under Michigan and Ohio state laws.  Plaintiff filed his First Amended Complaint two months later.  On June 14, 2004, Plaintiff filed a charge of age discrimination with the EEOC.  (Second Am. Compl. ¶ 63).  The EEOC issued Plaintiff a Right-to-Sue letter on July 9, 2004.  Plaintiff then filed his Second Amended Complaint on September 10, 2004, adding a violation of the ADEA as a fifth count.  Defendant filed its Motion for Summary Judgment on September 23, 2005.  Plaintiff responded on October 17, 2005. Defendant replied on November 2, 2005.

Plaintiff Allen Greenfield ("Plaintiff") is an individual and a resident of the State of Michigan.  (Second Am. Compl. ¶ 1).  Defendant Sears, Roebuck & Company ("Defendant") is a corporation with its principal place of business in Illinois and incorporated in a state other than Michigan.[2]  (*Id.*).

---

[1]     Count I:      Violation of the Elliot-Larsen Civil Rights Act for Age Discrimination
        Count II:     Violation of the Ohio Civil Rights Act for Age Discrimination
        Count III:    Violation of the Elliot-Larsen Civil Rights Act for Retaliation
        Count IV:     Violation of the Ohio Civil Rights Act for Retaliation

[2] Though it is not stated in the Second Amended Complaint, Defendant is incorporated in the State of New York.

2

Plaintiff was born on February 4, 1943.  (*Id*. at ¶ 5).  He began his employment with

Defendant on September 4, 1990 as a District Business Manager ("DBM").  (*Id*.).  Plaintiff was

twice promoted to other DBM positions: in 1992 and 1994.  (Docket No. 15, Def.'s Mem. Supp.

Summ. J. 2).  Joe McCurry ("McCurry"), the Detroit District General Manager ("Detroit

DGM"), and Mary Trinkel, the Regional Human Resources Manager, promoted Plaintiff to the

position of Human Resources District Manager ("HRDM") in 1996. (*Id*.).  Plaintiff worked as a

HRDM for six years.  (Second Am. Compl. at ¶ 7).  During his tenure as a HRDM, Plaintiff

claims McCurry made ageist comments to him.  (*Id*. at ¶ 8).

In September of 2001, Walt Crockrel, the Store Manager of the Ann Arbor store retired.

(Def.'s Br. 8).  After hearing about the vacancy, Plaintiff told McCurry he would like to apply

for the job.  (Docket No. 20, Pl.'s Resp. Ex. 5, Greenfield's Dep. 56: 18-19).  McCurry allegedly

informed Plaintiff that he "had limited potential because of [his] age and there were other

candidates who had higher potential than [him]."  (Docket No. 20, Pl.'s Resp. Ex. 5, Greenfield's

Dep. 56: 22-24).  The Ann Arbor job was eventually filled by Pam Blanchard, who was 14 years

younger than Plaintiff.  ((Docket No. 15, Def.'s Mem. Supp. Summ. J. 8).  When a vacancy

developed in the Novi store a month later, McCurry told Plaintiff not to post for the managers

job because of age and his limited potential as a store manager.  (Docket No. 20, Pl.'s Resp. 12).

Scott Caines, who is 22 years younger than Plaintiff, was placed in the Novi store.  ((Docket No.

15, Def.'s Mem. Supp. Summ. J. 9).

Plaintiff also alleges that McCurry stated that "age is always one of those factors to be

considered in making promotional decisions" regarding associates.  (*Id*.).  Further, Plaintiff

claims that from the time he became a HRDM, he noticed a continuing pattern of age

discrimination by Defendant.  (*Id*.).

Plaintiff contends that on October 25, 2001, McCurry made a discriminatory statement regarding Paul Ciaramitaro ("Ciaramitaro") in a staff and store manager meeting.  (Second Am. Compl. ¶ 11).  McCurry allegedly remarked "that it was Ciaramitaro's age which prevented him from obtaining a favorable job in the reorganization."  (*Id*.).  Plaintiff claims that "McCurry praised Ciaramitaro as a merchant, but acknowledged his 'age' problem."[3]  (*Id*.).  Ciaramitaro relayed McCurry's comments to Plaintiff in his capacity as HRDM, and Plaintiff conducted an investigation and confirmed that McCurry made the statements.  (*Id*. at ¶ 12).  In November of 2001, Plaintiff wrote a memo to the Regional Human Resources Manager, Merle Grizzell ("Grizzell"), regarding McCurry's ageist statements to Ciaramitaro.  (Docket No. 20, Pl.'s Resp. 6).  Grizzell did not perform a further investigation because McCurry told him the comments were made in jest and that Plaintiff did not produce any additional evidence of discrimination. (Docket No. 20, Pl.'s Resp. Ex. 7, Grizzell Dep. 25, 27).  Grizzell only discussed the situation with Greenfield, McCurry and Grizzell's superiors, Mike Reskey and Milt Mooney.  Grizzell did not contact or interview any witnesses to McCurry's comments, including Ciaramitaro.  (*Id*. at 24:8-22). Grizzell subsequently advised Plaintiff to apologize to McCurry for investigating him without informing him first.  (*Id*. at 50:1-18).

In 2001, Defendant announced that it was undergoing a national reorganization and as a result, it was eliminating the HRDM position.  (Second Am. Compl. ¶ 10).  The effective date for the elimination of Plaintiff's position was August 31, 2002.  ((Docket No. 15, Def.'s Mem.

---

[3] "McCurry [stated] that he wouldn't want to offer Ciaramitaro an opportunity with his 'age and only hard goods background.' McCurry then looked directly at Ciaramitaro and said, 'I guess, Paul, you can now sue me for age discrimination."  (Second Am. Compl. ¶ 13).

Supp. Summ. J. 2).  Upon that date,  Plaintiff had to find a new position or he would be

terminated.  (Docket No. 20, Pl.'s Resp. 1).

In January 2002, McCurry retired and Winfrey Smith ("Smith") became the Detroit

DGM. ((Docket No. 15, Def.'s Mem. Supp. Summ. J. 8).  Plaintiff has not alleged that Smith

discriminated against him.  (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 128: 9-16).

After McCurry's retirement, Plaintiff claims he was discriminated against when

Defendant chose younger individuals for the Lincoln Park and Ann Arbor SGM positions.  In

April and May 2002, Plaintiff was assigned to the Lincoln Park store as an interim store

manager.  (Docket No. 20, Pl.'s Resp. 7; Pl.'s Resp. Ex. 5, Pl.'s Dep. 126: 12-13).  Smith told

Plaintiff to stop searching for a job and move his things to the Lincoln Park store.  (Docket No.

20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 126:21-23)   However, instead of being selected as the SGM,

Smith told Plaintiff he would not be the Lincoln Park manager and the position was given to Pam

Blanchard.  (Docket No. 20, Pl.'s Resp. Ex. 5, Pl.'s Dep. 126: 17-19; Pl.'s Resp. 7).  Plaintiff

claims that, according to Smith, he did not get the permanent SGM job at Lincoln Park because

Smith could not "sell it" to Teresa Byrd, the Regional Manager.  (Docket No. 20, Pl.'s Resp. Ex.

5, Pl.'s Dep. 127: 19-22).

Blanchard's move to the Lincoln Park store in June 2002 created an opening at a lower

volume store in Ann Arbor.  (*Id*.).  Plaintiff immediately applied for the open SGM position in

Ann Arbor.  (*Id*.).  Plaintiff called Larry Cassar ("Cassar"), the Toledo District General Manager

("Toledo DGM"),[4] to express his interest in the Ann Arbor position.  (Docket No. 20, Pl.'s Resp.

---

[4] The Ann Arbor store was in the Toledo District.  (Def.'s Br. 9).  Cassar, the District
Manager of the Toledo area, was at the same level as Smith, the Detroit District Manager.  (Pl.'s
Resp. Ex. 5, Pl.'s Dep. 130-31).

5

Ex. 5, Pl.'s Dep. 131). Cassar and Plaintiff spoke about Plaintiff's background, of which Cassar, according to Plaintiff, was very complimentary. (*Id*. at 131: 5-6). Cassar told Plaintiff during the conversation that he was a good candidate for the Ann Arbor job. (*Id*. at 131: 6-7).

Cassar was looking for a candidate who had hard and soft line experience. (Docket No. 20, Pl.'s Resp. 8). Plaintiff, though more experienced in soft lines, had years of experience running large retail stores. (*Id*.). Cassar eventually hired Jay Shapiro ("Shapiro") for the open Ann Arbor position. (*Id*.). According to Plaintiff, Shapiro was younger and less qualified for the job. (*Id*.).

In order to find a position before he was terminated, Plaintiff enlisted the help of Teresa Byrd ("Byrd"), the new regional manager. (Docket No. 20, Pl.'s Resp. 9). Plaintiff sent Byrd a letter and asked to meet with her to discuss his qualifications. (*Id*.). Plaintiff applied and interviewed for a position as store manager in Strongsville, OH, but was not offered the position. (*Id*. at 10). However, Plaintiff received a call from DGM Rob Robinette after the interview, who informed him that an opening was created at the Randall Park store and offered Plaintiff the position of store manager. (*Id*.). Plaintiff's store was in an economically depressed area and had staffing and theft problems. (*See* Def.'s Br. Ex. 2, Robinette Dep. 6, 8, 17). As a result, Plaintiff could not "turn the store around." (Docket No. 20, Pl.'s Br. 10). On September 22, 2003, Plaintiff was placed on a performance improvement plan. (*Id*.). A week after Plaintiff was placed on the performance plan, he became emotionally incapable of continuing to work and left the employ of Defendant. (*Id*.).

In its March 2, 2006 Opinion, the Court granted in part and denied in part Defendant's Motion for Summary Judgment. The Court granted Defendant's Motion for Summary Judgment

on: (1) Plaintiff's Title VII and ELCRA claims under a theory of direct evidence; (2) Plaintiff's

retaliation claim; and (3) Plaintiff's Ohio Civil Rights Act claims for age discrimination and

retaliation.  The Court denied Defendant's Motion for Summary Judgment on Plaintiff's Title VII

and ELCRA claims under a theory of circumstantial evidence.

On March 16, 2006, Defendant timely filed a Motion for Reconsideration.  On May 24,

2006, the Court granted in part and denied in part Defendant's Motion for Reconsideration.  The

Court granted Defendant's motion as to an unplead Title VII claim and Plaintiff's ADEA claim,

but denied Defendant's motion as to its pretext and lack of record support arguments.

Defendant filed its motions *in limine* on July 18, 2006.

### Defendant's Motion *In Limine* to Exclude the Admission of and Testimony Regarding the Abandoned and Dismissed Failure to Promote Claims (Docket No. 35)

Defendant argues that Plaintiff abandoned all of his failure to promote claims, except for

the Ann Arbor store manager position.  Defendant avers that Cassar was the only decisionmaker

who had anything to do with Defendant's decision not to promote Plaintiff to the Ann Arbor

store manager position.  Defendant contends that McCurry and Vest had nothing to do with the

Cassar's decision, and testimony about them is irrelevant and thus inadmissible under Federal

Rule of Civil Procedure 401 and 402.  Defendant also asserts that if the court decides that the

abandoned and dismissed claims are relevant and admissible, the testimony should still be

precluded because it is more prejudicial than probative under Federal Rule of Evidence 403.

Plaintiff did not respond to this motion.

## II.  ANALYSIS

### A.  Standard

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "A district court has 'broad discretion to determine matters of relevance.'" *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997). "Evidence that is not relevant is not admissible." FED. R. EVID. 402. Federal Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### B.     Discussion

Plaintiff's Amended Complaint stated that he was denied five store management positions. The decisionmakers for three of the store management promotions which Plaintiff applied for and did not obtain was DDM Joe McCurry. Randy Vest, the vice-president for The Great Indoors, was the decisionmakers for one of the denied store management positions. Larry Cassar, the TDM, was the decisionmakers for the last store manager promotion that Plaintiff did not receive.

Although Plaintiff claimed that he was denied five store management positions, he stated in his Response to Defendant's Motion for Summary Judgment that "[g]iven the vast evidence of discriminatory and retaliatory motive with regard to [the Ann Arbor position under Cassar], Plaintiff will abandon claims regarding other store management positions alleged in his Complaint." (Docket No. 20, Pl.'s Response to Def.'s Mot. Summ. J. 1 n.1). As a result, on summary judgment, the Court only ruled on the 2002 Ann Arbor store manager promotion, which Plaintiff did not receive. The denial of this promotion is the scope of the trial.

Because the 2002 Ann Arbor promotion is the issue at trial, the previous positions that

8

Plaintiff originally claimed to have been denied to him due to discrimination are irrelevant to the issue of whether he was denied the Ann Arbor store manager position due to discrimination on the part of Cassar. Further, the only decisionmakers relevant to Plaintiff's denial of the Ann Arbor store manager position was Cassar, who made the ultimate decision.[5]

Therefore, Plaintiff's four other failure to promote claims are separate incidents, and no longer before this Court. Accordingly, the Court finds that the abandoned and dismissed claims are irrelevant to the issue at bar, and are thus irrelevant and inadmissible under Federal Rule of Civil Procedure 401 and 402.

## III.   CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion *In Limine* to Exclude the Admission of and Testimony Regarding the Abandoned and Dismissed Failure to Promote Claims.[6]

### Defendant's Motion *In Limine* to Exclude Evidence and Argument Regarding: (a) Alleged Stray Remarks by McCurry and Cassar; (b) Plaintiff's Notes Regarding Alleged Stray Remarks; and (c) Plaintiff's Dismissed Retaliation Claim (Docket No. 38)

Defendant argues that evidence and argument relating to McCurry's alleged statements, Plaintiff's notes and Plaintiff's retaliation claim, must be precluded. Defendant contends that McCurry retired in January 2002, which was six months before Cassar's decision to select Shapiro over Plaintiff. Defendant argues that the Court already ruled that McCurry's statements

---

[5] The Court previously ruled that McCurry did not make the decision whether to promote Plaintiff to the Ann Arbor position in 2002, indicating that McCurry retired six months before Cassar made the decision to select Jay Shapiro. (Docket No. 25, Opinion and Order 12).

[6] The Court finds it unnecessary to review Defendant's motion under Rule 403.

were stray remarks which could not be used as direct evidence of discrimination.  In light of the

Court's prior ruling, Defendant avers that Plaintiff should be precluded from testifying about or

offering evidence regarding McCurry's alleged comments, including his notes, because they are

irrelevant.  Defendant asserts that evidence and testimony of the dismissed retaliation claims

should be excluded because it has no bearing on the issue of whether Cassar discriminated

against Plaintiff on the basis of his age.

Defendant also argues that since McCurry's comments were stray remarks, Cassar's

"echo" of McCurry's remarks are stray remarks as well.  Defendant believes that Cassar's

statements do not meet the *Cooley* factors.

Defendant contends that even assuming the Court finds that McCurry's comments, or

Cassar's "echo" of McCurry's comments, were relevant and admissible, the comments are more

prejudicial than probative, and should be excluded under Federal Rule of Evidence 403.

Plaintiff argues that the statements made by McCurry and Cassar, as well as Plaintiff's

notes regarding the remarks, are relevant to Plaintiff's *prima facie* case of age discrimination and

therefore admissible under Rule 401 and 402.  Plaintiff avers that the McCurry and Cassar's

remarks are admissible when used as circumstantial evidence of discrimination.  Plaintiff

supports its position by arguing that while McCurry was not the ultimate decisionmakers, his

statement and Cassar's echo of McCurry's statement, are indicative of a corporate bias at

Defendant.  Plaintiff also argues that McCurry's statement should not be excluded simply

because it was made before the adverse action.  Likewise, Plaintiff avers that the fact that

McCurry was a non-decisionmakers does not detract from the admissibility of his remark.

Defendant replies that vague or isolated comments which were made by non-

10

decisionmaker long before the adverse employment decision is made are not probative of

discriminatory motivation by an employer.  Defendant contends that because the Court already

found McCurry's comments to be stray remarks as direct evidence, they are not probative and

irrelevant to the issue.  Defendant cites *Walker v. DaimlerChrysler*, Case No. 02-74698, Docket

No. 185 (E.D. Mich. Oct. 20, 2005) (unpublished).

Defendant also argues that Cassar's echo of McCurry's comments must be excluded

because (1) Cassar only repeated the comments made by McCurry; (2) Cassar had no

decisionmaking authority relative to Store Manager promotions at the time of the "echo"; (3)

Plaintiff has stated that he never heard Cassar say anything discriminatory about him.  Defendant

asserts that there is no evidence that McCurry influenced or was involved in Cassar's decision to

promote Shapiro over Plaintiff.  Defendant believes that the cases cited by Plaintiff are not on

point.

## II.    ANALYSIS

### A.    Standard of Review

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any

tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." "Evidence that is

not relevant is not admissible."   FED. R. EVID. 402.  "Although relevant, evidence may be

excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury . . ." FED. R. EVID. 403.  "Situations in this area

call for balancing the probative value of and need for the evidence against the harm likely to

result from its admission." *Cooley*, 25 F.3d 1325, 1330 (6th Cir. 1994).  Evidence that has no

11

direct bearing on the issue to be decided and embellishes the circumstantial evidence directed to that issue by adding "smoking gun" type evidence, should be excluded. *Schrand v. Fed. Pacific Elec. Co*, 851 F.2d 152, 156 (6th Cir. 1988). While remarks made by a non-decisionmakers "are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." *Johnson v. The Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003) (concluding in an admittedly close case that a managerial-level employee's comments were relevant when the employee played a significant role in the decisionmaking process and the statement was viewed in connection with the evidence concerning racial slurs and jokes).

### B.     Discussion

#### 1.     Stray Remarks by McCurry

"Unless the statements of conduct of non[-]decisionmaker can be imputed to the ultimate decisionmaker, such statements or conduct '[can not] suffice to satisfy the plaintiff's burden . . .' of demonstrating animus." *Nobel v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000). It is not demonstrative of discrimination when an isolated discriminatory remark is made by someone who has no managerial authority over the alleged discriminatory decision. *Smith*, 391 F.3d at 760. "Comments made long before the adverse employment action and comments" by non-decisionmaker have no probative value in a disparate treatment case. *Shefferly v. Health Alliance Plan of Mich.*, 94 Fed. Appx. 275, 280 (6th Cir. 2004) (unpublished); *see Krohn v. Sedgwick James of Mich, Inc.*, 624 N.W.2d 212, 300 (Mich. App. 2001) ("[F]ederal courts have consistently held that isolated or vague comments

made by non-decisionmaker long before the adverse employment decision is made are not probative of an employers' discriminatory motivation.").  While remarks made by a non-decisionmakers "are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." *Johnson v. The Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003).

Plaintiff's response cites *Abrams v. Lightolier Inc*., 50 F.3d 1204 (3rd Cir. 1995),[7] which found that "discriminatory comments by non-decisionmaker, or statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination. *Id*. at 1214.  In *Abrams*, the defendant argued that admission of evidence of an "ageist" comment was improper because the supervisor was not a decisionmaker for the plaintiff's termination.  *Id*. Nevertheless, the court found that the supervisor was found to be a decisionmaker.  *Id*. Additionally, the discriminatory comments by non-decisionmaker that the court was referring to dealt with "ageist" comments made by the same supervisor, regarding other employees in the company.  *Id*.  Dissimilar to *Abrams*, the comments Plaintiff claims are circumstantial in this motion are not made by the decisionmaker.

In *Cooley*, the defendant appealed a jury verdict in an ADEA action in favor of the Plaintiff.  *Id*. at 1327.  The defendant argued that the district court had abused its discretion when it admitted testimony regarding the company president's ageist remarks.  *Id*. at 1330.  The court reviewed relevant case law and set forth factors to determine the admissibility of statement if offered to show employment:

---

[7] Plaintiff also cites *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), which follows *Abrams*.

> In age discrimination cases, this court has examined statements allegedly showing employer bias by considering [1] whether the comments were made by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision-making process; [3] whether they were more than merely vague, ambiguous, or isolated remarks; [4] and whether they were proximate in time to the act of termination. However, this court has not previously expressly spelled out these considerations as a formal standard. We do so today.

*Id*.

    *Cooley* applies to the case at bar.  While it appears that most case law applies the *Cooley* factors for statements brought as direct evidence, there is no case law declining to apply *Cooley* to statements used as circumstantial evidence.[8]  Even though the statements are presented as circumstantial evidence, the Court finds that the *Cooley* factors are helpful in the analysis of whether stray remarks are relevant.

    In the instant case, it is undisputed that McCurry was not involved in the decision to demote Plaintiff.  Defendant seeks to exclude evidence and testimony of statements made by McCurry.  The statements by McCurry at issue are: that "age is always one of those factors to be considered in making promotional decisions"; that a co-worker's age prevented him from obtaining a favorable job;[9] that Plaintiff "had limited potential because of [his] age and there were other candidates who had higher potential than [him];" and that Plaintiff should not apply for the managers job because of age and his limited potential as a store manager.[10]

    Applying *Cooley*, McCurry was not the decisionmaker in Defendant's decision to place

---

  [8]  This Court also applied *Cooley* in *Walker v. DaimlerChrysler*, Case No. 02-74698, Docket No. 185 (E.D. Mich. Oct. 20, 2005).

  [9] This remark was alleged to have been made at a staff meeting.

  [10]  McCurry is alleged to have made the last two remarks to Plaintiff when he applied for two different store manager positions.

someone other than Plaintiff in the vacant Ann Arbor store manager position.  Moreover, McCurry's statements were not related to the decisionmaking process.  Though McCurry's statements were more than merely vague, ambiguous, or isolated remarks, his statements were not proximate in time to the act of termination.[11]  McCurry also retired in January of 2002, six months before employment decision on the Ann Arbor store manager position.

As a result, the alleged statements attributed to McCurry tend to be irrelevant under the *Cooley* factors to the determination at issue in this case.

Alternatively, Defendant argues that even if the stray remarks are relevant, their probative value is substantially outweighed by the danger of unfair prejudice, issue confusion or misleading the jury.  Plaintiff responds that the remarks provide support to the fact that a corporate bias existed within Defendant.

"The risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer."  *Krohn v. Sedgwick James of Michigan, Inc*, 244 Mich. App. 289, 303 (2001).

The stray comments made by non-decisionmaker in the instant case are unduly prejudicial under Rule 403 because they would confuse the jury as to the actual issue of the case.  Although discriminatory statements may reflect a cumulative managerial attitude that has influenced the decisionmaking process at Defendant, Plaintiff does not provide evidence of other

---

[11] McCurry's statements were made prior to a letter sent to Merle Grizzel on November 2, 2001.

manager's discriminatory statements to support that a corporate bias existed.  The comments made by McCurry have no bearing on whether discrimination played a part in the Plaintiff's demotion, and allowing these remarks may mislead the jury as to its importance.  Therefore, the Court finds that the stray comments by non-decisonmakers are barred by Rule 403.

### 2.        Stray Remarks by Cassar

Defendant first contends that the *Cooley* factors should be used for determining the relevancy of the statements at issue.  In *Cooley*, the defendant appealed a jury verdict in an ADEA action in favor of the Plaintiff.  *Id*. at 1327.  The defendant argued that the district court had abused its discretion when it admitted testimony regarding the company president's "ageist" remarks.  *Id*. at 1330.  The president's alleged comments were "'I don't like to be around old people' and '[e]verybody over 30 years old needs to be put in a pen . . . . [I]f they don't want to be put in a pen, they should be confided to a concentration camp.'"  *Id*. at 1329.  The court reviewed relevant case law and set forth factors to determine the admissibility of statements when offered to show employment discrimination:

> In age discrimination cases, this court has examined statements allegedly showing employer bias by considering [1] whether the comments were made by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision-making process; [3] whether they were more than merely vague, ambiguous, or isolated remarks; [4] and whether they were proximate in time to the act of termination. However, this court has not previously expressly spelled out these considerations as a formal standard. We do so today.

*Id*.

*Cooley* applies to the case at bar.  While it appears that most case law applies the *Cooley* factors to statements brought as direct evidence, there is no case law refusing to apply *Cooley* to statements used as circumstantial evidence.  Even though the statements are now presented by

16

Plaintiff as circumstantial evidence, as stated above, the Court finds that the *Cooley* factors assist in the analysis of whether stray remarks are relevant.

Plaintiff claims that Cassar "echoed" McCurry's sentiments and reiterated that McCurry believed that age should be taken into account. Plaintiff only speaks generally to the comments allegedly made by Cassar. Plaintiff states that he remembers Cassar speaking about a promotional decision made by McCurry and that Cassar told him that McCurry said age has to be taken into consideration when people are promoted. (Greenfield Dep. 133:13-16). Plaintiff also testified that Cassar "echo['d McCurry's] sentiments about age being part of a promotion factor." (Greenfield Dep. 134:3-4).

Applying *Cooley*, the comments were made by the decisionmakers, though the comments were not related to the adverse employment action. The comments were ambiguous and isolated remarks, having nothing to do with Plaintiff. Neither comment, on their face, strongly suggest that Cassar harbors a bias against older workers. Plaintiff even admits that Cassar was repeating what he had been told by McCurry. Nowhere does Plaintiff allege that Cassar made comments in which he conveyed that he agreed with McCurry's statement. Here, Cassar was merely "echoing," or repeating, McCurry's statements. Also, Defendant claims, and Plaintiff does not contest, that Cassar was a store manager at the time he "echoed" McCurry's statements. Cassar had no authority at the time to hire or fire store managers.[12] Indeed, on November 2, 2001, seven months before the Ann Arbor store manager decision was made by Cassar, Plaintiff wrote a letter to Merle Grizzell complaining of discriminatory comments. Nowhere in the letter does it mention any negative public or private statements by Cassar regarding age. (*See* Def.'s Br. Ex.

---

[12] Plaintiff's deposition is unclear regarding exactly when Cassar made the comments.

7, Grizzell Letter).   Plaintiff contends that the comments "reflect a cumulative managerial attitude that has influenced Defendant's decision-making process for some time."  (Pl.'s Resp. 9).  But, as in the case with McCurry, Plaintiff has not offered specific statements by individual managers other than McCurry to support that a corporate bias or cumulative managerial attitude existed.  Therefore, the Court finds that the stray comments by Cassar are barred.

### 3.      Retaliation Claim

Because the Court previously granted summary judgment to Defendant on Plaintiff's retaliation claim – finding that Plaintiff failed to show a causal connection between Grizzell's letter and Defendant's failure to promote – the Court finds that evidence and argument by Plaintiff on this claim is irrelevant to the issues of the case.

## III.   CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion *In Limine* to Exclude Evidence and Argument Regarding: (a) Stray Remarks by McCurry and Cassar; (b) Plaintiff's Notes Regarding Alleged Stray Remarks; and (c) Plaintiff's Dismissed Retaliation Claim. Additionally, the Court excludes any of Plaintiff's notes regarding the above remarks or Plaintiff's retaliation claim.

### Defendant's Motion *In Limine* to Preclude Plaintiff from Testifying Regarding Shapiro's Qualifications (Docket No. 37)

Defendant argues that Plaintiff's testimony regarding his opinion why Shapiro was promoted is inadmissible under Rule 701.  Defendant contends that Plaintiff does not have facts within his personal knowledge Shapiro's qualifications.  Defendant also argues that Plaintiff's testimony regarding Shapiro's qualifications is inadmissible hearsay under Federal Rules of Evidence 802 and 803.  Defendant asserts that it is an out of court statement being offered to

18

prove the truth of the matter asserted, *i.e.*, that Shapiro was not as qualified as Plaintiff. Defendant further asserts that Plaintiff's testimony regarding Shapiro's qualifications, and Plaintiff's subjective opinion of his own qualifications, is irrelevant under Rule 401, and thus inadmissable under Rule 402.  Defendant avers that Plaintiff's testimony, even if relevant and admissible, is more prejudicial than probative under Rule 403.  Defendant believes that Plaintiff's skewed testimony about Shapiro would unfairly prejudice Defendant because it would confuse the jury.  More specifically, Defendant argues that the testimony would place the jury in a position whether to accept Plaintiff's opinion of Shapiro's qualifications, or Cassar's perception of Shapiro's qualifications, when only Cassar's perception matters.

Plaintiff responds that evidence regarding the skills and experience of both Plaintiff and Shapiro are relevant to the issue set for trial.  Plaintiff contends that he would not testify about what Shapiro's experience or qualifications actually were, because he lacks personal knowledge about Shapiro.  However, Plaintiff asserts that evidence of Shapiro's experience of qualifications would be presented through other witnesses and documents.  Plaintiff avers that he then can present his own testimony comparing his opinion of his own qualifications, as compared to Shapiro's qualifications on the record, under Rule 701.  Plaintiff argues that his testimony would provide a counterweight to Cassar's testimony and allow the jury to make its own determination. Plaintiff believes that the evidence would not be more prejudicial than probative under Rule 403, because the qualifications of Plaintiff and Shapiro will be on the record and the jury can make its own evaluation of the merits of the two candidates.  Plaintiff argues that he is entitled to demonstrate that Defendant's claim that Shapiro was more qualified is unreasonable and unworthy of credence and his testimony comparing qualifications is relevant to this inquiry.

19

Defendant replies that Plaintiff admits he has no personal knowledge about the qualifications of Shapiro. Thus, Defendant argues that the court should grant its motion on that basis alone. Defendant admits that it has not sought to exclude Plaintiff's testimony about this own qualifications or his testimony regarding what he was told were the qualifications Defendant was seeking in candidates for the store manager position. Defendant asserts that Plaintiff's lay opinion regarding the relative qualifications of himself and Shapiro are inadmissible under Rule 701 and irrelevant under Rule 401 and 402. Defendant believes Plaintiff cannot make comparison testimony because he has no first-hand knowledge of Shapiro's qualifications. Defendant argues that *Bender v. Hecht's Department Stores*, 455 F.3d 612 (6th Cir. 2006), clarified that Plaintiff's opinion regarding Shapiro's qualifications is irrelevant and inadmissible. Defendant avers that Plaintiff is not the factfinder and his subjective opinion comparing his qualifications with Shapiro's has no bearing on the issue presented to the jury.

## II.    ANALYSIS

### A.    Standard

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "A district court has 'broad discretion to determine matters of relevance.'" *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997). "Evidence that is not relevant is not admissible." FED. R. EVID. 402. Federal Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

20

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Opinion testimony by lay witnesses is governed by Federal Rule of Evidence 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

### B.    Discussion

Plaintiff concedes that he does not have personal knowledge regarding Shapiro's qualifications.  Likewise, Defendant concedes that it has not sought to exclude Plaintiff's testimony about his own qualifications or about the skills needed for the store manager position, as told to him by Defendant.  Therefore, the only issue before this court in the instant motion is whether Plaintiff may testify as to his lay opinion regarding his qualifications compared to the evidence of Shapiro's qualifications submitted into evidence by Defendant

Defendant ultimately argues that Plaintiff's perception of the qualifications of the candidates for the promotion is not relevant.  Defendant asserts that what is relevant is the Cassar's perception of the qualifications of Plaintiff and Shapiro.  Defendant supports its position with *Bender v. Hecht's Department Stores*, 455 F.3d 612 (6th Cir. 2006).

In *Hecht's*, the found that the weight of qualifications evidence differs depending on whether a plaintiff presents other evidence of discrimination.  The court found that when other evidence is presented, "that evidence [when paired with the qualifications evidence] might result in the plaintiff surviving summary judgment."  *Id*. at 626-27.  However, to survive summary judgment when little or no evidence of discrimination is proffered other than qualifications

21

evidence, "the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id*. at 627.   The court also held that "if two reasonable decisionmaker could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's." *Id*. at 628.

With *Hecht's* in mind, Defendant avers that Plaintiff is not the factfinder and his opinion comparing Shapiro's qualifications with his own has no bearing on the issue decided by the jury. The Court does not find Defendant's argument convincing.

Before the *Hecht's* court was a summary judgment motion.  The instant case has passed the summary judgment stage, as the Court denied Defendant's summary judgment on Plaintiff's ELCRA claim on March 2, 2006.  Additionally, *Hecht's* was decided on August 1, 2006, five months after this Court's summary judgment opinion.  Further, by arguing that Plaintiff should not be allowed to give his opinion comparing Shapiro's qualifications with his own, it appears that Defendant seeks to keep Plaintiff from testifying as to why he believes there was discrimination.  The jury will hear why Cassar thought Shapiro more qualified than Plaintiff. Likewise, under Rule 701, Plaintiff can give his lay opinion regarding why he believes he is more qualified than Shapiro.  Plaintiff's testimony would be based on his perception of his qualifications and his time spent in retail management, as compared to the qualifications of Shapiro, which will be supported by evidence and testimony at trial.

In its supplemental brief, Defendant argues that *Devries v. Biolife Plasma Services, L.P.*, Case No. 05-684, 2006 WL 2700902 (W. D. Mich. Sept. 19, 2006) (Enslen, J.) (unpublished), an

unpublished case out of the Western District of Michigan, supports its argument.  However, *Devries* is not on point.  In *Devries*, the court ruled on a Motion to Strike Affidavit.  The case did not involve an evidentiary ruling on whether a party at trial can compare his own qualification with the qualifications submitted into evidence of another individual.  *Devries* found that statements made in an affidavit regarding individuals who committed workplace violations should be stricken, even thought the information was taken from undisputed workplace records.  *Id*. at 2.  The rationale given was that the information is not based on the affiant's personal knowledge and is considered hearsay.  *Id*.  Here, the information will not be hearsay,[13] but evidence properly admitted at trial.  Further, *Devries'* holding that lay witness testimony must be based on the witness's perceptions is not contrary to this opinion.  Plaintiff will be testifying to his own qualifications, to which he has personal knowledge, and comparing his qualifications to Shapiro's qualifications submitted into evidence.

Plaintiff's testimony is not more prejudicial than probative under Rule 403.  Plaintiff is entitled to demonstrate why he believes Defendant's proffered reason was pre-textual.  The jury is free to evaluate the testimony of both Cassar and Plaintiff, as well as the other evidence and testimony presented.  Thus, Plaintiff's testimony does not prejudice Defendant.

Accordingly, the Court finds that Plaintiff may testify to his own qualifications and compare his qualifications with Shapiro's qualifications on the record.

## III.   CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion *In Limine* to

---

[13] The Court finds that Plaintiff's testimony is not hearsay because he is not testifying as to Shapiro's qualifications, but testifying to his own qualifications and comparing his qualifications with Shapiro's qualifications put into evidence.

Preclude Plaintiff from Testifying Regarding Shapiro's Qualifications.


**SO ORDERED.**


                                        s/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  October 12, 2006

                        CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 12, 2006.


                                        s/Denise Goodine
                                        Case Manager